IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

RIMA QAYYUM,

           Plaintiff,

v.                                              CIVIL ACTION NO. 3:08-0996

US AIRWAYS, INC.,

           Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant's Motion to Dismiss (Doc. 7). For the reasons explained below, the motion is **GRANTED in part** and **DENIED in part**. Counts III, IV, V, and VI, of the complaint are hereby dismissed. Counts I and II remain.[1]

**Standard of Review**

Under Federal Rule of Civil Procedure 8(a) a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)) (internal quotations and ellipses omitted). In reviewing a motion to dismiss the Court must "take the facts in the light most favorable to the

---

[1]In the section of Plaintiff's Complaint (Doc. 1) titled "Preliminary Statement" Plaintiff states claims under 49 U.S.C. §§ 41705 and 40127(a). These statutory sections were not included specific counts, delineated later in the complaint. Defendant's motion to dismiss makes no mention of these statutory sections. Pursuant to the pleading standard under Fed. R. Civ. P. 8, the Court finds the reference to these statutory sections in the preliminary statement was enough to place Defendant on notice of the claims. Claims for relief under 49 U.S.C. §§ 41705 and 40127(a) will remain.

plaintiff, but [it] need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (internal citations omitted). The complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is *plausible* on its face." *Id.* quoting *Twombly*, 127 S.Ct. at 1974.

## Background

Pursuant to the above standard, the facts as recited are taken from the Plaintiff's complaint, and viewed in the light most favorable to Plaintiff. Ms. Qayyum, a woman of Pakastani descent, alleges she suffered illegal discrimination from the Defendant, US Airways, when she tried to fly from Huntington, West Virginia to Detroit, Michigan in August of 2006. This discrimination, she alleges, violated several federal statutes and state tort law.

Eight days prior to Ms. Qayyum's flight, on August 9, 2006, British Authorities uncovered a plot to use liquid explosives to bring down jetliners. As a result, the Transportation Security Administration ("TSA") banned all liquids, gels, and creams from carry-on containers. On August 17, 2006, Ms. Qayyum arrived at the Tri-State airport, near Huntington, West Virginia with facial cream and a bottle of water in her carry-on bag. When these items were discovered, she was pulled out of a security-check line. Her carry-on items were subjected to a field test for explosives. She alleges other passengers were simply allowed to throw away prohibited items.

The initial field tests came back positive. Authorities evacuated the airport and subjected Ms. Qayyum to a nine and a half hour interrogation. She waited five hours while a robot was brought in from Charleston, West Viriginia and attempted to explode her carry-on items. The water and facial cream did not ignite. The items were then sent to a lab for further chemical testing. A law enforcement officer accompanied Ms. Qayyum to her Huntington apartment.

Later that day, laboratory results revealed Ms. Qayyum's carry-on items contained no explosive materials. FBI agent James Harper drove her back to Tri-State airport so she could collect her baggage and make new reservations for a flight leaving Huntington for Detroit the next day. A US Airways agent gave her a ticket for the first morning flight on the 18th and advised her to arrive early because she would be going through a detailed security check.

The morning of the 18th, agent Harper again accompanied Ms. Qayyum to the airport. When they arrived they found a media throng awaiting them. Ms. Qayyum had not contacted the media and alleges that only she and US Airways knew of her travel plans. US Airways made no special arrangements for Ms. Qayyum to circumvent the media in entering the terminal and boarding her flight. Ms. Qayyum alleges further, that although agent Harper informed US Airways the Ms. Qayyum had been cleared of all charges and laboratory results showed her carry-on items contained no explosives, that US Airways did not allow Ms. Qayyum to redeem her ticket and board her flight. Ms. Qayyum eventually drove to Michigan.

**Analysis**

Plaintiff's Complaint enumerates six counts against Defendant: Count I, for violations of 42 U.S.C. § 1981; Count II, for violations off the Civil Rights Act of 1964 (42 U.S.C. § 2000d); Count III, under 42 U.S.C. § 1983 for violations of the 4th, 6th and 14th Amendments to the United States Constitution; Count IV for Intentional Infliction of Emotion Distress; Count V for Negligence, and Count VI for Negligent Failure to Train, Supervise and Discipline Employees. Plaintiff's claims for relief on Count I and II survive Defendant's motion to dismiss. Count III is dismissed because of Plaintiff's failure to allege action under the color of state law. Counts IV, V, and VI are state tort claims, which are preempted by the Airline Deregulation Act and must be dismissed.

**I.      Plaintiff's Claims for Relief for Violation of 42 U.S.C. § 1981 Are Supported by Allegations that US Airways Refused to Allow Ms. Qayyum to Board Her Flight.**

The function of 42 U.S.C. § 1981 is to protect the equal right of "all person within the jurisdiction of the United States to make and enforce contracts without respect to race." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474-75 (quoting 42 U.S.C. § 1981(a)) (internal quotations omitted). The statute prohibits both public and private racial discrimination. *Runyon v. McCrary*, 427 U.S. 160, 168-75 (1976). To state a claim under the statute, a plaintiff must show, "1) that [she] is a member of a racial minority, 2) that the defendant discriminated against [her] on the basis of [her] race, and 3) that the discrimination implicated one or more of the activities enumerated under the statute." *Garrett v. Tandy Corp.,* 295 F.3d 94, 98 (1st Cir. 2002), *accord, Mian v. Donaldson, Lufkin, & Jenrette Sec. Corp.* 7 F.3d 1085 (2d Cir. 1993).

There is no dispute that Plaintiff is a member of a racial minority. The complaint alleges that she suffered discrimination based on her race, and that as a result of the discrimination she was unable to enforce the contract she had made with US Airways when she purchased her ticket. The complaint states specifically, "US Airways did not allow Ms. Qayyum to redeem her ticket and fly on August 18, 200[6]." Compl. at 6. Defendant urges the Court to accept its interpretation of the complaint – that this particular allegation must be read in combination with the allegation US Airways failed to provide Ms. Qayyum special assistance in navigating the media. Accepting Defendant's reading of the complaint would contravene the applicable standard of review. Factual allegations must still be taken in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) (reiterating after *Twombly* that a Court must trial judge must "accept as true all of the factual allegations contained in the complaint."). Here, there is a clear factual allegation of Defendant's refusal to allow Ms. Qayyum to redeem her ticket. This allegation can

easily be read as separate and distinct from allegations of denial of special treatment – under the applicable standard it must be.

## II. Plaintiff's Complaint Contains All Necessary Allegations for a *Prima Facie* Case of Discrimination Under Title VI of the 1964 Civil Rights Act

Title VI of the Civil Rights Act of 1964 provides, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. In seeking to dismiss this Count, the Defendant again asks the Court to accept its reading of the complaint and ignore a clear factual allegation: "Defendant US Airways is the recipient of federal financial assistance." Compl at 7. Defendant urges the Court that the only financial assistance Defendant has received from the federal government were loan guarantees under the Stabilization Act, but that those ended in 20005. It points to *United States Department of Transportation v. Paralyzed Veterans of America*, 477 U.S. 597 (1986) ("*Paralyzed Veterans*") for the proposition that federal assistance to airports cannot be considered financial assistance to the airlines, sufficient to meet the statutory requirement.

Defendant's reading of *Paralyzed Veterans* is correct; but, to accept that characterization of Plaintiff's allegations one must make strong inferences and assumptions in Defendant's favor. The Court simply cannot make those conclusions at this stage of litigation. While the Plaintiff has not provided a detailed factual allegation to support this point of law, the complaint is plausible on its face and does not call for unwarranted or unreasonable conclusions. If Defendant does not receive financial assistance, then the Title VI claim will be resolved in its favor, likely on summary judgment. Before then, Plaintiff must be given an opportunity to engage in discovery and present evidence in support of her allegations.

**III.     Plaintiff Has Abandoned Her Claim For Relief Under 42 U.S.C. § 1983.**

Under 42 U.S.C. § 1983, citizens are guaranteed a private cause of action to remedy violations of the rights secured by the United States Constitution. *Dixon v. Coburg Dairy, Inc.* 369 F.3d 811, 819 (4th Cir. 2004).  An essential element of the claim is that the defendant acted under the color of state law. *Id.*  Here, the Defendant argued that Plaintiff had not alleged an action under the color of state law; Plaintiff failed to address the argument or support her claim in response. Plaintiff has abandoned her claim for relief under 42 U.S.C. § 1983.  Count III of the complaint is dismissed.

**IV.     Plaintiff's State Law Claims Are Preempted by the Airline Deregulation Act**

In 1978, Congress enacted the Airline Deregulation Act ("ADA") in order to "maximize reliance on competitive market forces" and further "efficiency, innovation, and low prices." *Morales v. Trans World Airlines, Inc*., 504 U.S. 374, 378 (1992) (quoting 49 U.S.C.App. §§ 1302(a)(4), 1302(a)(9)).  The ADA included an express preemption clause prohibiting States from impinging upon deregulation by enforcing their own laws "relating to rates, routes, or services" of the airlines. *Id.* at 379-80 (quoting 49 U.S.C.App. § 1305(a)(1)).  The U.S. Supreme Court has interpreted this preemption broadly, holding that state actions "having a connection with or reference to airline 'rates, routes, or services are pre-empted." *Id.*

An airline's boarding procedures are services within the meaning of the statue. *Smith v. Comair, Inc.* 134 F.3d 254, 259 (4th Cir. 1998).  In *Smith,* the Fourth Circuit Court of Appeals explained that boarding decisions implicated safety concerns and "[a]irlines might hesitate to refuse passage in cases of potential danger for fear of state law contract actions claiming refusal to

transport."[2] *Id.* The *Smith* court recognized, however, that not all state tort claims would be preempted, specifically "if the conduct too tenuously relates or is unnecessary to an airline's service." *Id.*

Counts V and VI of the Plaintiff's complaint for negligence and negligent training and supervision are based entirely on the allegation that Defendant refused to allow Ms. Qayyum to board her flight. Compl. at 10-11. As these claims directly implicate a boarding decision, they are preempted by the ADA.

Plaintiff's claim of intentional infliction of emotional distress rest in part on allegations that she was denied an opportunity to board, and partially on allegations that Defendant "discriminated against Plaintiff, made false accusations against plaintiff, and had Plaintiff willfully detained before hundreds of airport patrons." Compl. at 9. To the extent the claim for relief relies on denial of boarding, it is dismissed for the reasons already stated. Claims based on discrimination in the manner of false accusations and detainment must be dismissed as well. Plaintiff admits that initial testing of her carry-on items resulted in a false positive for explosives. *Id.* According to her own statement of facts, accusations and detainment occurred after this initial testing and before she was cleared of charges by more thorough laboratory analysis. Compl. at 4-6. The decision to accuse and detain her in front of other patrons was a decision related to boarding procedures and directly involved legitimate safety concerns. It falls squarely within the scope of preemption recognized by the Fourth Circuit in *Smith*. Count IV is dismissed.

---

[2] Plaintiff argues that the ADA was not meant to encompass safety concerns, citing *Alsaday v. Northwest Airlines Corp.* 2003 WL 1565944 (D. Minn. Mar. 3, 2003) for support. *Alsady* is a district court opinion from another jurisdiction, while *Smith* is binding authority from the Fourth Circuit Court of Appeals. Although there may be differences of opinion on the intent underlying the ADA and its scope of preemption, this Court must follow the Fourth Circuit's decision.

**CONCLUSION**

For the reasons explained above, Defendant's Motion to Dismiss (Doc. 7) is **GRANTED in part** and **DENIED in part**. Counts I and II remain; Counts III, IV, V, and VI are dismissed. The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: November 12, 2008

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE